CHEHARDY, Judge.
Plaintiff, Dixie Campers, Inc. (Dixie), appeals from a summary judgment in favor of defendant, Vesely Company (Vesely), dismissing with prejudice plaintiff’s suit against defendant for alleged breach of contract at plaintiff’s cost.
Dixie entered into a dealership agreement with Vesely on October 8, 1974, by which the defendant appointed the plaintiff its authorized “ * * * Apache dealer for the sale and distribution of Apache camping trailers and parts and accessories marketed by Vesely * * *.” (Emphasis ours.)
Exhibit “A” to Dixie’s dealer agreement, also dated October 8, 1974, contained the following statement:
“In consideration of the active and aggressive promotion of VESELY Products in the following described marketing area, VESELY will not, during the term of the Dealer Agreement, sell Apache products to any other person purchasing for resale who, to VESELY’S knowledge, maintains a place of business for sale of products in such marketing area. “Marketing Area: Jefferson, St. Charles, Plaquemines, St. Bernard, Orleans Parishes.”
During the3 existence of the agreement, Gerald T. Hennings, president of Dixie, stated in a sworn affidavit that it was the understanding of Dixie that the dealership agreement concerned not only Apache Camping Trailers but any and all Apache products. He also averred that Dixie, in fact, marketed and sold the following Apache products during the existence of the contract: Apache Campers, Empire Travel Trailers, Empire Motor Homes, and Apache Mini Homes.
Plaintiff’s petition further alleged that in November of 1977, during the existence of the contract in question, defendant appointed a firm known as Allgood Campers (All-good), located at 3629 Williams Boulevard, Kenner, Jefferson Parish, Louisiana, as its dealer for the sale and distribution of Apache products, in spite of plaintiff’s protests, and that Jefferson Parish was within the marketing area reserved to the plaintiff under its dealership contract.
In addition, plaintiff claimed that in late 1976 Vesely established a dealership for distribution and sale of Apache products in Slidell, Louisiana, said dealership known as Slidell Campers Sales and Service, Inc. (Sli-dell). Dixie also produced advertisements of Apache products placed by Allgood and Slidell in a local newspaper distributed in the parishes covered by Dixie’s contract.
Fred W. Krantz, director of sales of Vesely Company, said in a sworn affidavit the only Apache products sold to Allgood during this period were four Apache Travel Trailers, an item, defendant claimed, not covered under the exclusive dealership contract with Dixie. An attached photo copy of a computer printout which was dated July 31, 1978 and covered the period from August 1, 1977 to July 31, 1978 showed no Apache Camping Trailers sold to Allgood during this period.
*891 Defendant’s copy of Allgood’s dealer application, moreover, made reference to only Apache Travel Trailers and Empire Travel Trailers, without inclusion of Apache Camping Trailers, noting Dixie had an agreement.
Defendant further produced letters of response to dealership inquiries stating that, in regard to Apache Camping Trailers, the territory in question had been previously committed to Dixie.
Plaintiff contends that the trial court erred in sustaining defendant’s motion for summary judgment in view of the fact there clearly existed a material issue of fact in the matter and that defendant was not entitled to judgment as a matter of law.
In Bohm v. CIT Financial Services, Inc., 348 So.2d 132, 134 (La.App. 1st Cir. 1977), writ refused October 7, 1977, the Court held:
“LSA-C.C. art. 1945 provides:
‘Art. 1945. Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
‘First -That no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;
‘Second -That courts are bound to give-legal effect to all such contracts according to the true intent of all the parties;
‘Third-That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;
‘Fourth -That it is the common intent of the parties-that is, the intention of all-that is to be sought for; if there was difference in this intent, there was no common consent and, consequently, no contract.’
“If the agreement between the parties is clear and unambiguous, and will not lead to absurd consequences, the intention of the parties must be gathered from the writing itself. It is only where the agreement is unclear, ambiguous or will
lead to absurd consequences that the court should go beyond the written agreement to gather the true intention. * * ”
We are aware of the cases of Berger v. Fireman’s Fund Insurance Company, 305 So.2d 724 (La.App. 4th Cir. 1974), and Vital v. Hous. Auth. of City of New Iberia, 360 So.2d 1182 (La.App. 3d Cir. 1978), wherein the courts have held that summary judgment is often not appropriate to show subjective facts such as motive, intent, malice, good faith or knowledge. However, in the present case we cannot find that ambiguity or absurd consequence from the words of the contract that would require the trial court to go beyond the words of the written agreement in determining the intent of the parties themselves.
The present case, therefore, we find distinguishable from cases such as Hall v. Management Recruiters of New Orleans, Inc., 332 So.2d 509 (La.App. 4th Cir. 1976), wherein this court denied summary judgment, holding that it is rarely an appropriate procedure for determining intention. Hall, supra, however, involved a notation on the back of a check and at issue was whether the payment was offered and accepted as full settlement of all wage-related claims, in spite of the absence of an explicit and detailed contract of compromise. Clearly, the situation in Hall, supra, therefore, is not comparable to the present case, where the trial court had before it a written, unambiguous contract that limited the court’s determination of the parties’ intent.
The court in Crow v. Monsell, 200 So.2d 700 (La.App. 2d Cir. 1967), also addressed itself to the interpretation of written contracts at pages 701-702:
“A cardinal rule for the interpretation of contracts is that courts must seek for and ascertain, if possible, the mutual intention of the parties. LSA-C.C. Art. 1945; Cooley v. Meridian Lumber Co., 195 La. 631, 197 So. 255 (1940); Chicago Mill & Lumber Co. v. Lewis (La.App.) 68 So.2d 913 (2d Cir. 1953-cert, denied). Although language employed in contracts is usually *892 interpreted according to the ordinary and customary meaning of the words used, clauses couched in general terms, which, if taken literally would lead to unreasonable consequences must be construed according to what, under all circumstances, was probably the intention of the parties. Losecco v. Gregory, 108 La. 648, 32 So. 985 (1901); Molero v. California Company (La.App.) 145 So.2d 602 (4th Cir. 1962-cert. denied). Where the words of a contract are susceptible of more than one meaning, courts must give them the interpretation that carries out the object and purpose of the contract. Robbert v. Equitable Life Assur. Soc., 217 La. 325, 46 So.2d 286 (1950). Even where the words used in a contract are fairly explicit, it is the duty of the courts to refrain from construing them in such a manner as to lead to absurd consequences. LSA-C.C. Art. 1945; Texaco, Inc. v. Vermilion Parish School Board, 244 La. 408, 152 So.2d 541 (1963); Bondio v. Joseph Binder, Inc. (La.App.) 24 So.2d 398 (Orl.1946).”
For this court or the trial court to accept the plaintiff’s contention that although his exclusive dealership in a written agreement was limited to only Apache Camping Trailers, the intent of the parties in Exhibit “A” of the contract was to limit the sale of all of Vesely’s products in the marketing area to only Dixie, would, indeed, be construing the words of the contract in such a way as to lead to absurd consequences, and this construction of the contract in question, therefore, would directly contravene the established jurisprudence of our courts.
Reasonableness demands that the words “Apache products” in Exhibit “A” be interpreted to mean only those products listed in the main body of the contract, i. e., Apache Camping Trailers.
Neither can we find merit in plaintiff’s citation of the case of National Safe Corp. v. Benedict and Myrick, Inc., 371 So.2d 792, 795 (La.1979), wherein the court said:
“Article 1901 of the Civil Code requires good faith performance of all agreements. A principle of implied obligations in contracts is also stated in Article 1903 of the Code in these words: ‘The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect.’ The effect of equity on implied obligations is expressed in Article 1964 in these terms: ‘Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.’ Insofar as pertinent here, the ‘equity intended by this rule is founded in the Christian principal no’t to do unto others that which we would not wish others should do unto us . . . . ’ La.Civil Code art. 1965.
“From these pronouncements we are reminded that not all obligations arising out of contract need be explicitly stated. Into all contracts, therefore, good faith performance is implied. Furthermore, everything that by equity is considered incidental to the particular contract, or necessary to carry it into effect, is also a part of all agreements. And, as Article 1964 of the Civil Code makes clear, equity will supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from that source.
******
“It is evident from the principles announced in the Code that contracts are to be understood, not only from what is expressed, but also everything that by law, equity or custom is considered as incidental to the particular contract, or necessary to carry it into effect.”
Vesely’s establishment of a dealership in Slidell was not in breach of its contract with Dixie. Slidell is in St. Tammany Parish, an area not covered in Dixie’s exclusive contract. It would be unreasonable to conclude that Vesely agreed to also prevent dealerships in parishes not covered in Dixie’s contract from advertising in those parishes controlled by Dixie or that, since *893 the contract is silent in this regard, that principals of equity would demand this conclusion in interpreting Dixie’s contract. The establishment of the Slidell dealership did not, in any way, prevent Dixie from performing its contract with Vesely.
Vesely’s establishment of the All-good dealership in Jefferson Parish was not in breach of Dixie’s contract since conclusive proof was offered at the trial court level that the only vehicles sold to Allgood were Apache Travel Trailers, an item not sold to Dixie and not listed in its dealership contract. Furthermore, a review of Vesely’s correspondence regarding dealership inquiries and a reading of the Allgood contract itself can only lead to the conclusion that Vesely acted in good faith performance of its contract with Dixie by consistently protecting that dealership’s rights under the agreement. This court feels, as apparently did the trial court, that Vesely firmly established, through copies of correspondence, dealership agreements and sworn affidavit, that it was its intent to limit Dixie to only the sale of Apache Camping Trailers in that company’s marketing area. We agree with the trial court in not accepting Dixie’s contention that its intent was a different one (i. e., that the contract encompassed a11 Apache products).
In accordance with LSA-C.C.P. art. 966, the pleadings, answers to interrogatories, depositions, and admissions of the parties, together with the affidavits, show that in the present case there is no genuine issue as to material fact and that the mover for summary judgment, Vesely Company, is entitled to judgment as a matter of law.
For the reasons assigned the trial court’s judgment is affirmed in all respects.

AFFIRMED.