546 So.2d 869 (1989)
LOUISIANA SAVINGS ASSOCIATION, INC.
v.
BLUEBONNET HOLDING PARTNERSHIP, George M. Bonfanti, Gerald E. Fackrell and Noel B. Baum. (Two Cases)
No. 88 CA 0756, 88 CA 0748.
Court of Appeal of Louisiana, First Circuit.
June 20, 1989.
*870 Ralph E. Hood, Baton Rouge, for Louisiana Sav. Ass'n, Inc.
Eric A. Kracht, Baton Rouge, for Gerald E. Fackrell, Jr.
Before CARTER, LANIER and LEBLANC, JJ.
CARTER, Judge.
This is an appeal from trial court judgments refusing to exempt from seizure certain life insurance proceeds.

FACTS
The facts of the instant case are relatively simple and undisputed. In 1984, Noel B. Baum (Baum), George M. Bonfanti, and Gerald E. Fackrell, Jr. were partners in various business ventures. In 1984, State Mutual Life Assurance Company (State Mutual)[1] issued a policy of life insurance insuring the life of Baum in the face amount of $2,666,000.00. Bonfanti and Fackrell were named as beneficiaries under the policy. At or about the same time, Bonfanti and Fackrell each obtained policies of life insurance in the amount of $2,666,000.00, naming Baum as a beneficiary thereunder. Shortly after the policy was issued, Baum attempted to substitute Janet F. Baum as beneficiary, without the knowledge or consent of either Bonfanti or Fackrell. Further, Baum assigned a portion of the policy to the insurer without the knowledge or consent of Bonfanti or Fackrell.
In June, 1987, Baum died with the policy in effect. Bonfanti, Fackrell, and Janet F. Baum each claimed the proceeds as beneficiaries under the policy and advised State Mutual of their respective claims. State Mutual advised Bonfanti, Fackrell, and Janet F. Baum that, because of the conflicting claims, State Mutual intended to provoke an interpleader or concursus proceeding and deposit the death proceeds under the policy into the registry of the court.
In order to avoid litigation, Bonfanti, Fackrell, and Janet F. Baum entered into a written settlement agreement on October 20, 1987. The agreement distributed the proceeds among Bonfanti, Fackrell, and Janet F. Baum as follows: (a) Bonfanti shall be entitled to $450,000.00, representing his portion of the net death proceeds payable to him as a beneficiary under the policy; (b) Fackrell shall be entitled to $450,000.00, representing his portion of the net death proceeds payable to him as a beneficiary under the policy; and, (c) Janet F. Baum shall be entitled to the entire remaining balance of the net death proceeds payable to her as a beneficiary under the policy. The agreement also provided, in pertinent part, as follows:
4. George M. Bonfanti and Gerald E. Fackrell, Jr. herewith ratify Noel B. "Butch" Baum's right to have made a change of beneficiary and acknowledge his actual change of beneficiary, in naming Janet F. Baum a lawful beneficiary under The Policy, to the extent shown in paragraph 3(C) above. George M. Bonfanti and Gerald E. Fackrell, Jr. herewith ratify Noel B. "Butch" Baum's *871 right to have made an assignment of The Policy, and acknowledge the actual assignment made to the insurer.
5. Janet F. Baum agrees to diligently pursue collection from SMA [State Mutual] of the entire net death proceeds, and to hold Four Hundred Fifty Thousand and No/100 ($450,000.00) Dollars in escrow for George M. Bonfanti, and Four Hundred Fifty Thousand and No/100 ($450,000.00) Dollars in escrow for Gerald E. Fackrell, Jr., and to disburse the same as set forth in paragraph 8 below.
6. George M. Bonfanti and Gerald E. Fackrell, Jr. agree to notify SMA of the "withdrawal" of their claims, to grant SMA a full release and discharge of any liability to them under The Policy, and to direct payment of The Policy proceeds to Janet F. Baum. (emphasis added)
Thereafter, Janet F. Baum executed a receipt and release, releasing State Mutual from any and all liability under the policy. Bonfanti and Fackrell also executed releases, releasing any and all claims against State Mutual arising out of or related to a policy of life insurance insuring Baum's life. The releases executed by Bonfanti and Fackrell also consented to the payment of the net death proceeds to Janet F. Baum.
On March 17, 1987, Louisiana Savings Association, Inc. (LSA) filed a petition to collect the unpaid balance due on a promissory note executed by Bluebonnet Holding Partnership and personally endorsed by Baum, Bonfanti, and Fackrell. Judgments of default were entered against Bonfanti and Fackrell on June 23, 1987, and July 27, 1987, respectively.
Thereafter, LSA filed garnishment proceedings seeking the seizure of all funds owed to Bonfanti and Fackrell pursuant to the settlement agreement for distribution of the proceeds on the policy of life insurance. LSA by virtue of a writ of fieri facias and citations in garnishment caused the settlement proceeds in the possession of the attorney for Bonfanti and Fackrell to be seized. Counsel for Bonfanti and Fackrell, as garnishee, answered the garnishment petitions, admitting to possession of funds belonging to Bonfanti and Fackrell and alleging that the settlement proceeds were exempt from seizure. Bonfanti and Fackrell then filed a motion to dissolve the seizure on the grounds that the funds seized by LSA were exempt from seizure under LSA-R.S. 22:647.
After hearing on the motion to dissolve, the trial court determined that Bonfanti and Fackrell failed to prove by a preponderance of evidence that they were lawful beneficiaries under the policy. As such, the trial court found that Bonfanti and Fackrell were not entitled to the exemption under LSA-R.S. 22:647. Accordingly, the trial court denied the motion to dissolve the seizure. The trial court then rendered judgment in favor of LSA commanding the garnishee to pay to the East Baton Rouge Parish Sheriff all funds, plus interest, which were the property of Bonfanti in the garnishee's control. The trial court also ordered the garnishee to hold all funds belonging to Fackrell pending further orders of the court. Thereafter, on December 21, 1987, the trial court rendered judgment, which was signed on January 13, 1988, in favor of LSA commanding the garnishee to pay to the East Baton Rouge Parish Sheriff all funds, plus interest, in the garnishee's control, which belonged to Fackrell.
From these adverse judgments, Bonfanti and Fackrell appeal. The sole issue presented on appeal is whether the funds payable to Bonfanti and Fackrell, pursuant to a settlement with Janet F. Baum, were life insurance proceeds exempt from seizure under LSA-R.S. 22:647. Although only one issue is raised, Bonfanti and Fackrell assign the following assignments of error:
1. The trial court erred in its failure to give effect to the settlement agreement between appellants and Janet F. Baum.
2. The trial court erred in its conclusion that appellants were not "beneficiaries" within the meaning of La.R.S. 22:647.
3. The trial court erred in its ultimate conclusion that the portion of the death *872 proceeds accruing to appellants were not exempt from seizure by appellee, thus failing to liberally construe the exemption.

DISCUSSION
LSA-R.S. 22:647[2] provided, in part, as follows:
A. The lawful beneficiary, assignee, or payee, including the insured's estate, of a life insurance policy or endowment policy, heretofore or hereafter effected shall be entitled to the proceeds and avails of the policy against the creditors and representatives of the insured and of the person effecting the policy or the estate of either, and against the heirs and legatees of either such person, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use.
* * * * * *
C. The provisions of Sub-section A and B of this Section shall apply:
(1) Whether or not the right to change the beneficiary is reserved or permitted in the policy or contract; or
(2) Whether or not the policy or contract is made payable to the person whose life is insured, to his estate or to the estate of an annuitant if the beneficiary, assignee or payee shall predecease such person....
Under the clear provisions of the statute, in order to claim the exemption, the claimant must be the lawful beneficiary, assignee, or payee of a life insurance policy. In determining the beneficiary of a life insurance policy, it is necessary to ascertain the intention of the deceased. In this regard, the courts are bound to give legal effect to all contracts and their terms, including insurance policies, according to the true intent of the parties, and the intent is to be determined by the words of the contract when they are clear and explicit and lead to no absurd consequences. Joseph v. Joseph, 537 So.2d 863 (La.App. 5th Cir.1989); Baker v. Life General Security Insurance Company, 405 So.2d 1162 (La.App. 1st Cir. 1981). When the agreement is unclear, ambiguous, or will lead to absurd consequences, the court should go beyond the written agreement to gather the true intention. Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981); Joseph v. Joseph, supra; Baker v. Life General Security Insurance Company, supra; Bohm v. CIT Financial Services, Inc., 348 So.2d 132 (La.App. 1st Cir.1977), writ denied, 350 So.2d 673 (La.1977).
Further, where a policy of life insurance reserves to the insured the right to revoke at any time a previous designation of beneficiary and to make a new designation of beneficiary, the beneficiary acquires no vested interest in the policy or its proceeds during the lifetime of the insured. Substantial compliance by an insured with policy provisions for a change of beneficiary will be given effect where the intention of the insured to make a change is manifest and the change of beneficiary is not contrary to law and does not affect vested rights. Philadelphia Life Insurance Company v. Whitman, 484 So.2d 266 (La.App. 3rd Cir.1986).
In the instant case, the policy of life insurance issued by State Mutual contained the following pertinent provision:
BeneficiaryThe beneficiary is named by you in the application to receive the death proceeds. The interest of any beneficiary will be subject to any assignment. You may declare your choice of any beneficiary to be revocable or irrevocable. A revocable beneficiary may be changed by you at a later time. An irrevocable beneficiary must consent in writing to any change.
A change of beneficiary may be made by written request while the insured is living. The change will take place as of the date the request is signed even if the *873 insured is not living on the day the request is received. Any rights created by the change will be subject to any payments made or actions taken by SMA Life before the written request is received.
The interest of a beneficiary who dies before the insured will pass to the surviving beneficiaries in proportion to their share in the proceeds unless otherwise provided. If all beneficiaries die before the insured, the death proceeds will pass to the owner.
The policy, however, does not contain any provision indicating that the beneficiary was irrevocable.
Therefore, having determined that the policy did not provide that the beneficiary was irrevocable, the question is whether Baum's change of the beneficiary was done in substantial compliance with the terms of the policy. The application for life insurance, dated August 22, 1984, designated Bonfanti and Fackrell as primary beneficiaries under the policy of life insurance issued on November 16, 1984. However, on November 28, 1984, Baum completed a nomination of beneficiary and request form, changing the beneficiary of the policy from Bonfanti and Fackrell to Janet F. Baum. The change of beneficiary was made in compliance with the express terms of the policy, and the beneficiary designation was changed from Bonfanti and Fackrell to Janet F. Baum effective November 28, 1984, almost two and one-half years prior to Baum's death.
Bonfanti and Fackrell strenuously argue that the settlement agreement executed between Janet F. Baum and themselves demonstrates that they were beneficiaries under the policy. They reason that their claims to the insurance proceeds, like Janet F. Baum's claim, arise out of the fact that each had at one time been the designated beneficiary.
While we agree that the claims of Bonfanti and Fackrell to the policy proceeds, if valid, would have entitled them to beneficiary status, the agreement among Janet F. Baum, Bonfanti, and Fackrell did not confer beneficiary status on Bonfanti or Fackrell. In fact, in the settlement agreement, quoted earlier, Bonfanti and Fackrell acknowledged that Baum had the right to change the beneficiary designated and, in fact, changed the beneficiary, naming Janet F. Baum the "lawful beneficiary" under the policy. Since Bonfanti and Fackrell were not lawful beneficiaries under the policy, any settlement agreement attempting to confer beneficiary status on Bonfanti and Fackrell would clearly not bind third parties, such as LSA.
Bonfanti and Fackrell also argue that Baum did not have the right to change the beneficiary of the policy because of an agreement among the partners. Bonfanti and Fackrell contend that the partners had agreed not to change the beneficiaries under the life insurance policies and that Baum breached his fiduciary relationship as a partner in attempting to change his beneficiary. Bonfanti and Fackrell may have claims against Baum, personally, for breach of his fiduciary relationship with the partnership. However, any such alleged breach does not alter the status of Bonfanti and Fackrell in regard to the life insurance proceeds.[3]
In the instant case, the trial judge, in his written reasons for judgment, stated:
Though counsel for mover stated in argument, both oral and in brief, that the claimants to the insurance proceeds had compromised their differences as between themselves and therefore, the determination of "lawful beneficiary" was not before the Court, the Court cannot agree. In order to prevail on the Motion to Dissolve, movers must prove, by a preponderance of the evidence that they are lawful beneficiaries because the statute only exempts funds from seizure which are made available to such beneficiary. The evidence presented on the *874 motion consisted of a written stipulation and the testimony of Gerald Fackrell. Included in the stipulation was a compromise which mover suggests resolves the issue without necessity of judicial determination. The compromise was not of a claim against the insurance company, for it was not a party to the compromise. It was a compromise with Janet Baum of a potential claim, either against Janet Baum individually, or against Janet Baum in her legal capacity as representative of the succession of Butch Baum. In either case, considering all the evidence, the Court does not find there to be any evidence that Bonfanti or Fackrell are "lawful beneficiaries" within the meaning of LRS 22:467 (sic). The Court finds, therefore, that movers have not carried their burden of proving more probably than not that they are the lawful beneficiaries. In fact, from the evidence presented, the Court finds that Janet Baum is more probably than not the lawful beneficiary.
Therefore, since movers have failed to show by a preponderance of the evidence that they are "lawful beneficiaries" of the life insurance policy at issue, the funds under seizure are not exempt from such seizure pursuant to LSA-R.S. 22:647, and the Motion to Dissolve is denied.
We have carefully reviewed the entire record in each of the consolidated appeals and find both records devoid of any evidence establishing that Bonfanti and Fackrell were "lawful beneficiaries" under the policy. As such, we find that the trial court correctly determined the proceeds derived from the settlement with Janet F. Baum were not exempt from seizure under LSA-R.S. 22:647.

CONCLUSION
For the above reasons, the judgments of the trial court determining that the life insurance proceeds belonging to Bonfanti and Fackrell in the possession of the garnishee are not exempt from seizure and commanding the garnishee to deliver the funds belonging to Bonfanti and Fackrell to the East Baton Rouge Parish Sheriff is affirmed. Bonfanti and Fackrell are cast for all costs.
AFFIRMED.
NOTES
[1] It is also undisputed that at the time Baum was an agent for State Mutual and obtained the various life insurance policies on behalf of the partnership.
[2] LSA-R.S. 22:647 was amended by Acts 1987, No. 210, § 1, effective July 2, 1987. The amendment merely set forth that the "proceeds and avails of a policy" include the cash surrender value of the policy.
[3] Bonfanti and Fackrell have not alleged or established that Baum, as agent for State Mutual, failed to provide a policy of life insurance with an irrevocable beneficiary. In any event, both executed releases, discharging any and all claims against State Mutual arising out of the instant life insurance policy.